# In the United States Court of Federal Claims

No. 10-465C
(Filed February 16, 2011)

```
* * * * * * * * * * * * * * * * * * * * * *   *
                                              *   Military pay; disability
                                              *   retirement, 10 U.S.C. § 1201
JAMES D. FULBRIGHT,                           *   (2006); motion to dismiss for
                                              *   lack of subject matter
           Plaintiff,                         *   jurisdiction, RCFC 12(b)(1);
                                              *   Military Pay Act, 37 U.S.C.
     v.                                       *   § 204 (2006); impact of decision
                                              *   on disability claim by first board
THE UNITED STATES,                            *   or court to consider it on the
                                              *   statute of limitations, 28 U.S.C.
           Defendant.                         *   § 2501 (2006); tolling of Tucker
                                              *   Act statute of limitations.
* * * * * * * * * * * * * * * * * * * * * *   *
```

Michael D.J. Eisenberg, Washington, DC, for plaintiff.

Scott T. Palmer, Washington, DC, with whom was Assistant Attorney General Tony West, for defendant.  Major Jennifer B. Bottoms, U.S. Army Litigation Division, Arlington, VA, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

This matter is before the court on defendant's motion to dismiss pursuant to RCFC 12(b)(1), challenging the subject matter jurisdiction of plaintiff's claim for disability retirement pay as time-barred by the six-year statute of limitations imposed by 28 U.S.C. § 2501 (2006).  The unusual posture of this case stems from plaintiff's claim that he is entitled to disability processing from active service because he later was released from reserve status due to the same disability.  Argument is deemed unnecessary.

## FACTS

The extracts of plaintiff's military record presented as exhibits to defendant's motion to dismiss contain the following facts, which, unless otherwise noted, are not disputed. 1/

---

1/  All references to exhibits are sourced to exhibits filed with defendant's motion to dismiss filed on November 3, 2010 (hereinafter referred to as "Ex.").

James D. Fulbright ("plaintiff") is a veteran of the United States Army (the "Army") and the United States Army Reserve (the "Army Reserve"). He has both a lengthy career and a long-time dispute with the Army Reserve regarding whether he should have been retired on medical disability. His career path in the Army gives context to the history of his claim.

Plaintiff first served as an Infantryman with the Army on June 29, 1974, Ex. 1 (Enlistment Contract dated June 29, 1974), and held this position until August 20, 1975, when he was "relieved FROM ACTIVE DUTY not by reason for physical disability and transferred to the [Army Reserve]," Ex. 2 (Special Orders No. 226, transferring plaintiff to Army Reserve). He immediately was transferred to the Army Reserve's Officer Training Corps ("ROTC"), and, upon completion of his ROTC training, plaintiff was commissioned a Second Lieutenant in the Army Reserve, Ex. 3 (Appointment to Reserve Commissioned Officer dated May 14, 1977). Plaintiff entered active duty in the Army Reserve on October 29, 1977. Compl. filed July 20, 2010, ¶ 12. He was promoted to the rank of Captain on June 14, 1981. Id.

While parachuting in 1978, plaintiff "sustained a non-displaced fracture of the post-malleolus right ankle, sprain to the left ankle and left knee." Ex. 19 (February 2, 1993 Advisory Opinion from Chief Clinical Policy Consultants Division of Office of the Surgeon General). He was on active duty at that time. Id. Plaintiff aggravated the injury to his left knee in 1979 and "continued to complain of chronic knee pain"; he wore a knee brace and was treated with medication and underwent rehabilitation. Id.; see also Ex. 5 (plaintiff's "Medical Condition - Physical Profile Record" dated January 24, 1979, recording his "chronic knee strain with chondromalacia" and restricting plaintiff's duties from parachute jumping or running over one-half mile). These injuries, later documented during plaintiff's separation physical conducted upon his release from active duty, ultimately led to plaintiff's instant claim.

Plaintiff was released from active duty with the Army Reserve when he was passed over for promotion in 1989. The Chief Officer of the Retirement and Separation Branch notified plaintiff on January 16, 1989, that the Promotion Selection Board had not selected plaintiff for promotion to Major for the second time. Ex. 6 (letter from Chief, Officer, Retirement and Separation Branch dated January 16, 1989). By regulation the Army Reserve was required to release from active duty candidates for promotion who had been passed over twice, and, as such, plaintiff would be released. Id. Consequently, on March 4, 1989, plaintiff received orders directing his release on July 1, 1989. Ex. 7 (Order No. 063-212).

To determine if he was physically fit for separation, plaintiff underwent a physical examination with Dr. Melida Delerme on March 10, 1989. Ex. 8 (plaintiff's medical records). On April 26, 1989, Dr. Delerme referred plaintiff to orthopedic and podiatry clinics for consultation regarding the pain in his left knee, ankles, left shoulder, and lower back. See

generally Ex. 9 (medical referral papers and consulting physicians' recommendations). Plaintiff appeared for both appointments on June 2, 1989. Id. The orthopedic physician diagnosed plaintiff as suffering from "mechanical low back pain" and "chronic chondromalacia of the left knee," for which the physician prescribed back exercises and medication. Id. at 1. However, he determined that there was "no physical evidence of internal derangement of left knee" and concluded that no further orthopedic evaluation was required at that time. Id. At the podiatry clinic, the examining physician recommended stretching, "towel . . . exercises" and wearing "shoes of comfort" after finding three small fragments of glass in plaintiff's left foot. Id. at 3. Plaintiff returned to Dr. Delerme on June 30, 1989, who, taking into consideration the consulting physician's recommendations, found plaintiff medically qualified for separation. Exs. 8, 10. Dr. Delerme's findings were reviewed and approved by Dr. (Lt. Col.) Kenneth Lee. Ex. 8.

After plaintiff's paperwork was processed, he was honorably released from active duty with the Army Reserve, Military Police branch for "failure of selection, permanent promotion" and thereafter transferred to the Individual Ready Reserve with the Army Reserve Control Group (Reinforcement). Ex. 4 (Certificate of Release or Discharge from Active Duty). It appears that plaintiff still was eligible for promotion in this group, because the Reserve Component Selection Board determined at that time that he was qualified to be promoted to the rank of Major. However, because the United States Army Human Resources Command's ("HRC") database had not been updated with paperwork from plaintiff's separation physical stating that he was fit for service, plaintiff could not be promoted. Ex. 11, at 1 (memorandum from Department of Army Review Boards Agency dated August 1, 2008, detailing reason for plaintiff's failure to be promoted). But for this lack of information, the selection board would have promoted plaintiff to Major, USAR. Id.

On July 2, 1989, plaintiff applied for and received from the Department of Veterans Affairs (the "VA") a combined 50% disability rating for disability benefits, Ex. 12 (letter from VA to plaintiff dated August 10, 1990, explaining acceptance of plaintiff's Veteran's Application for Compensation or Pension), and subsequently requested, on August 30, 1990, a change from Individual Ready Reserve to retired/disabled status, Ex. 13, at 1. Plaintiff's request for a change in status outlined his years of service in various assignments and the injuries chronicled in his medical records that led the VA to grant him a 50% disability rating on August 10, 1990. Id. at 1-2. He requested the Army Reserve Personnel Center ("ARPERCEN") to "initiate a Medical Evaluation Board" (a "MEB") to reclassify his status from inactive Individual Ready Reserve and place him on a "Medically Retired List with all associated rights and privileges thereof." Id. at 2-3.

Despite his request, in a letter dated April 4, 1991, ARPERCEN notified plaintiff that his injuries—including, "arthritis of right ankle, status post surgery and internal derangement of right ankle"—rendered him unqualified for retention in the Army Reserve; plaintiff's

3

options were to elect a discharge from the Army Reserve, transfer to the Retired Reserve, or request a waiver for retention. Ex. 14 (letter dated June 4, 1991 from ARPERCEN to plaintiff, including form with plaintiff's release status options). None of the options included a change in disability status.

In returning the completed form, plaintiff elected transfer to the Retired Reserve with a handwritten qualification, that he "[d]isagree[d] with wording of this reply form letter and [had] substituted a personal letter for this purpose," which explained his desire to be classified as possessing a "medical disability." Ex. 15, at 1. In his accompanying letter, plaintiff outlined his contention: "In so much as all the mentioned injuries [rendering him ineligible for retention in the Army Reserve] . . . occurred while I was on active duty with the United States Army, I believe that I was wrongfully discharged . . . and should have instead been Medically Retired from Active Duty." Id. at 2. In essence, plaintiff identified the same injuries recorded in Dr. Delerme's 1989 medical assessment—that determined plaintiff was medically qualified for service—as the injuries that had disqualified him for retention in the Army Reserve. The Army Reserve subsequently assigned plaintiff to the Retired Reserve on May 22, 1991, because he was "[m]edically disqualified for retention in an active status or entry on Active Duty." Ex. 16 (Order No. C-05-801276).

Correspondence from the Army Board for Correction of Military Records Section (the "ABCMR" or the "Board" or the "correction board") to plaintiff dated May 27, 1992, reflects that plaintiff applied for a record correction. Ex. 17. The Memorandum of Consideration from the ABCMR sets forth plaintiff's position as alleging that "he should have been referred for disability processing 'after adverse medical examination results were discovered during [his] separation physical.'" ABCMR Memorandum of Consideration, No. AC92-07363, at 2 (Apr. 7, 1993).

In its Memorandum of Consideration (decision) dated April 7,1993, the Board outlined the evidence of record (plaintiff's military record), including the March 10, 1989 separation physical, in which the physician, "noting that the applicant had a chronic left knee problem, bilateral shoulder problems, low back pain because of a spinal disc problem and a left foot problem[,] . . . found him medically qualified for separation." Id. Plaintiff then was honorably released for failure to be promoted. The Board discussed plaintiff's 50% disability rating from the VA that was awarded for "a right ankle condition, a left knee condition, and injury to his left foot with sensory impairment . . . hypertension, recurrent low back strain, and persistent ringing in the ears." Id. at 3. However, the Board had received an advisory opinion from the Office of the Surgeon General, informing the Board that plaintiff "was performing satisfactorily on active duty with profile limitations prior to his second non [sic] selection and separation. He met retention standards at the time of discharge and a MEB was not warranted." Ex. 19 (Advisory Opinion from Chief Clinical Policy Consultants Division

4

of Office of the Surgeon General dated February 2, 1993). The Board attached the advisory opinion to its decision.

Based on the record before it, including the advisory opinion, the ABCMR concluded that "[t]here is no medical evidence of record . . . that prior to his separation from active duty [plaintiff] suffered from a medical condition of such severity that it rendered him physically unfit to perform the duties of his office, rank, grade or rating," a requirement for disability retirement under Chapter 61 of Title 10. Id. at 3-4. Plaintiff's continued performance raised a presumption of fitness, a presumption he had not overcome, id. at 4, and the award of the VA's rating "does not establish entitlement to medical retirement," id. at 5. Therefore, plaintiff "did not have any medically unfitting disability which required physical disability processing." Id.

Fifteen years later, in a letter dated June 26, 2008, to Col. Wanda L. Good, Commander of the HRC, plaintiff again raised his complaints, requesting that Col. Good "correct a grave injustice" by back-dating his promotion to Major and by convening a MEB "for all nine original physical disabilities provided . . . in 1990." Ex. 20, at 1. HRC responded on September 3, 2008, with a letter to plaintiff stating that, based on the type of order and time elapsed from its issuance, HRC lacked the authority to effect his promotion. Ex. 21, at 1. Regarding his request for a MEB, HRC explained that in 1991 plaintiff was properly transferred to the Retired Reserve, as opposed to "medically retired"; plaintiff selected to transfer to the Retired Reserve, which does not require a MEB to convene. Id. Furthermore, the VA disability compensation rating had "no relationship to the Army Physical Disability Processing System." Id. However, HRC enclosed an "advanced advisory opinion" for plaintiff to submit in conjunction with an application to the ABCMR that outlined HRC's opinion that plaintiff was entitled to a retroactive promotion to Major. Id.; see also id. at 3 (Advanced Advisory Opinion for Application for Correction of Miliary Records).

The advisory opinion, dated August 1, 2008, recommended that plaintiff be promoted to Major with a March 23, 1990 effective date, the adjourning date of the selection board that denied plaintiff the promotion after he was relieved from active duty. Id. at 3. The opinion explained that HRC had denied plaintiff's promotion to Major because the information from plaintiff's separation physical, i.e., that plaintiff was fit for duty, was never updated in the HRC database. Id. Had the HRC database been updated, plaintiff would have been promoted. Id. Procedurally, the advisory opinion recommended that the ABCMR revoke plaintiff's retirement orders and "reassess" plaintiff into the Control Group (Reinforcement), thereby enabling HRC to promote plaintiff to Major, to be immediately returned to Retired Reserve based on his medical disqualification. Id. The promotion would not provide plaintiff with any additional monetary compensation or "retirement points." Id.

5

Plaintiff included the advisory opinion in his October 7, 2008 application to the ABCMR, requesting that he be promoted to Major and that the ABCMR "correct the faulty decision making used by USARPERCEN" regarding the Army's failure to have his file reviewed by a MEB and its failure to follow the provisions applicable to a solider who has sustained a service-connected disability. Ex. 22, at 2 (Application to ABCMR filed October 7, 2008).

In a letter dated January 5, 2009, the ABCMR informed plaintiff of its decision to grant him partial relief, attaching to the letter the ABCMR's December 30, 2008 decision. Ex. 23 (In re Fulbright, ABCMR No. AR20080015402 (Dec. 30, 2008)). Even though 10 U.S.C. § 1552(b) (2006), requires applicants to file applications for correction of military records within three years of the discovery of the alleged error, the Board grounded its authority to correct plaintiff's records "in the interest of justice," the statutory exception to the three-year limitation. In re Fulbright, ABCMR No. AR20080015402, at 2. In accordance with HRC's advisory opinion, the correction board granted plaintiff's first request by revoking his discharge orders, so that plaintiff retroactively could be promoted to Major. Id. at 5. However, the ABCMR also determined (1) that "[t]here is no evidence of record which shows the applicant met the criteria for disability processing," particularly where "he was found qualified for separation" and "met the criteria for promotion to major (i.e., being medically fit)," and (2) that, therefore, he was not eligible for a MEB. Id. A letter dated March 26, 2009, from the Acting Chief, Army Review Boards Agency Support Division, St. Louis, informed plaintiff that his records had been corrected in accordance with the ABCMR decision. Ex. 24, at 1.

On June 30, 2009, plaintiff petitioned the ABCMR to reconsider its decision. Ex. 25 (June 30, 2009 letter requesting reconsideration of December 30, 2008 decision to deny change of disability status). Plaintiff contended that the correction board's decision was flawed in that plaintiff "would still have been up for a medical retirement had he been properly . . . promoted." Id. at 3. Plaintiff characterized the decision as determining that his failure to be promoted in 1989 to Major was incorrect, i.e., his failure to be promoted while on active duty, prior to separation; as before, plaintiff assigned error to the ABCMR's failure to consider plaintiff's VA disability rating. Id. at 4. Plaintiff once again requested an upgrade in discharge. Id.

The ABCMR denied plaintiff's request for reconsideration in a decision dated December 15, 2009. In re Fulbright, ABCMR No. AR 2009001426, at 8 (Dec. 18, 2009). Outlining plaintiff's history, and citing 10 U.S.C. § 1201 (2006), id. at 5, the ABCMR ultimately concluded that "[t]he applicant requests to have it both ways—that he was medically qualified so as to be promoted but also that he was sufficiently medically unqualified as to warrant a medical separation. He cannot have it both ways." Id. at 7. Accordingly, the Board declined to amend its December 30, 2008 determination. Id. at 8.

**DISCUSSION**

1. Standard of review

Defendant moves for dismissal of the complaint under RCFC 12(b)(1) for lack of subject matter jurisdiction, asserting the bar of the six-year statute of limitations codified in 28 U.S.C. § 2501. Plaintiff "bears the burden of proving that the Court of Federal Claims possesse[s] jurisdiction over his complaint," Sanders v. United States, 252 F.3d 1329, 1333 (Fed. Cir. 2001), and must establish jurisdiction by a preponderance of the evidence, Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). While the court will "normally consider the facts alleged in the complaint to be true and correct," id. at 747, because plaintiff's "allegations of jurisdictional facts are challenged by his adversary . . . he must support them by competent proof," McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); see also Daimlerchrysler Corp. v. United States, 442 F.3d 1313, 1318 (Fed. Cir. 2006) ("[I]t is settled that a party invoking federal court jurisdiction must, in the initial pleading, allege sufficient facts to establish the court's jurisdiction.").

Plaintiff filed suit under the Tucker Act, which confers jurisdiction to the United States Court of Federal Claims on "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). The court's statutorily conferred jurisdiction "waives the Government's sovereign immunity for those actions" stated within the Tucker Act, requiring the court to construe that waiver in favor of the Government. Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc); see also Radioshack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009) ("waivers of the United States's sovereign immunity are to be construed narrowly"). Because the Tucker Act does not set forth a substantive cause of action, "'in order to come within the jurisdictional reach and the waiver of the Tucker Act,'" plaintiff must root his claim in another law possessing a "'right to money damages.'" Greenlee County v. United States, 487 F.3d 871, 875 (Fed. Cir. 2007) (quoting Fischer, 402 F.3d at 1172).

Plaintiff also cites as authority for judicial review the Administrative Procedure Act, 5 U.S.C. § 706 (2006) (the "APA"), Compl. ¶ 4, which authorizes a reviewing court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A). The right to judicial review under the APA is articulated in § 702, which provides that a cause of action can be brought against the United States for any legal wrong stemming from an agency action, if the cause of action seeks relief "other than money damages." 5 U.S.C. § 702 (2006). Therefore, the APA is, by definition, not a money-mandating statute. See Martinez v. United States, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (en banc). Because the APA provides a separate forum for which to

7

bring a non-monetary cause of action against a governmental agency that is fundamentally different from a claim brought before the Court of Federal Claims under the Tucker Act, "the Court of Federal Claims lacks APA jurisdiction." Id. (citing Murphy v. United States, 993 F.2d 871, 874 (Fed. Cir. 1993) (recognizing fundamental differences between APA cause of action and Tucker Act claim)). "The difference is important," id., particularly when examining the statute of limitations applicable to the Tucker Act, as was the Martinez court's charge on review.

The statute of limitations for the Tucker Act requires that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501; see Alliance of Descendants of Tex. Land Grants v. United States, 37 F.3d 1478, 1481 (Fed. Cir. 1994). Compliance with the statute of limitations is a jurisdictional requirement in the Court of Federal Claims, John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 134 (2008), and it "cannot be waived or extended by equitable considerations," Young v. United States, 529 F.3d 1380, 1384 (Fed. Cir. 2008) (construing John R. Sand). A cognizable Tucker Act cause of action accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez, 333 F.3d at 1303 (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)).

A money-mandating statute under the Tucker Act is the Military Pay Act, 37 U.S.C. § 204 (2006), which entitles active-duty members of the military to basic pay for their designated pay grade. The statute is invoked in the context of military discharge cases, in which plaintiffs allege entitlement to monetary damages in the form of pay that they would have received but for an unlawful discharge. Martinez, 333 F.3d at 1303. These claims accrue immediately upon discharge, because appealing to a correction board is not required for judicial review. Id.; see also Chambers v. United States, 417 F.3d 1218, 1223 (Fed. Cir. 2005) (recognizing that "a claim for wrongful discharge accrues upon the servicemember's discharge rather than upon the final decision of the appropriate military corrections board"). The distinction between accrual of a claim associated with a military discharge under the APA, as opposed to the Tucker Act, is well established and was set forth explicitly by the United States Court of Appeals for the Federal Circuit in Martinez, 333 F.3d at 1313 ("Because the APA actions did not turn on a claim for money, the action could be said to accrue at the time of the challenged agency action—the action of the correction board in question—rather than at the time of the action that caused the plaintiff monetary loss—the discharge itself.").

A servicemember can also file a proper Tucker Act claim for "entitlement to military disability pay under 10 U.S.C. § 1201." Chambers, 417 F.3d at 1223. The act grants the

8

Secretary authority to retire a disabled servicemember who "is unfit to perform the duties of the member's office, grade, rank or rating because of physical disability incurred while entitled to basic pay." 10 U.S.C. § 1201(a). The law is unequivocal in the Federal Circuit that claims for disability retirement accrue when the appropriate military board denies or refuses to hear the claim: "[T]he first statutorily authorized board that hears or refuses to hear the claim invokes the statute of limitations." Chambers, 417 F.3d at 1224; see also Friedman v. United States, 310 F.2d 381, 385 (Ct. Cl. 1962) ("[W]here Congress has interposed an administrative tribunal between the claimant and the court. . . . [T]he claim does not accrue until the executive body has acted (if seasonably asked to act) or declines to act."). This is so because the claim arises out of the board's action or failure to act. See Chambers, 417 F.3d at 1224. Consequently, in contrast to a wrongful-discharge case, the statute of limitations for disability retirement pay claims will begin to run at the time a servicemember is discharged only if the servicemember requested that his claim for disability retirement be reviewed by an appropriate board and the request was refused or a board heard the claim, but denied it. Real v. United States, 906 F.2d 1557, 1560 (Fed. Cir. 1990).

If a disability retirement claimant was discharged without a board hearing, and the "'Correction Board [the present ABCMR] becomes the first proper board to act (or to be asked to act) on the matter, the claim does not ripen until that Board's action is final.'" Chambers, 417 F.3d at 1225 (quoting Friedman, 310 F.2d at 392). However, once a final decision is rendered, "[t]here is no tolling by further consideration after final board action. . . . [W]here a proper board has acted finally the running of the statute is [also] not tolled by later consideration by other boards or agencies." Friedman, 310 F.2d at 390. Should the statute of limitations bar a claim, an arbitrary refusal by a later board to grant it does not initiate a new cause of action. Id. at 394. "[J]udicial review means . . . that the Board's decision will be reviewed in a proper case, if a timely suit is brought." Id. at 397 (emphasis added). The Federal Circuit has framed the ultimate question, as follows: "When did the plaintiff have a claim to disability benefits which could be established in a court?" Real, 906 F.2d at 1562.

The Federal Circuit, again, explained the difference between a cause of action alleging an agency review board acted arbitrarily under the APA and a Tucker Act claim that is based on a final board decision. The underlying basis for a Tucker Act claim stemming from a retirement board's or a correction board's failure to grant relief is the denial of back pay; the cause of action is rooted in a claim for money damages. Martinez, 333 F.3d at 1314. Accordingly, the Federal Circuit has "consistently held that the limitations period is established by the date of accrual, which is the date on which the service member was denied the pay to which he claims entitlement." Id. The precedent established in other circuit courts of appeals adjudicating non-monetary challenges to a correction board action "is not

9

consistent with the approach [the Federal Circuit has] taken in the very different context of Tucker Act suits." Id. 2/

    2. <u>Characterization of plaintiff's cause of action</u>

Plaintiff's complaint alleges a claim under the money-mandating Military Pay Act, Compl. ¶ 3, which entitles certain members of the military to basic pay for the particular assigned pay grade, 37 U.S.C. § 204(a). However, plaintiff makes clear that he "is not seeking damages from wrongful discharge," but, rather, judicial review of the ABCMR's December 15, 2009 decision. 3/ Pl.'s Br. filed Dec. 10, 2010, at 5. Plaintiff's complaint

---

    2/ Plaintiff asserts that "[t]he circuits are split on when the right of action 'first accrues'" and urges the court to adopt the line of reasoning in <u>Green v. White</u>, 319 F.3d 560, 564-65 (3d Cir. 2003). Pl.'s Br. filed Dec. 10, 2010, at 7-10. Plaintiff charges that "[j]ustice requires that this Court follow the <u>Green</u> court." Id. at 10. To the contrary, this court is bound by Federal Circuit precedent. See <u>Coltec Indus., Inc. v. United States</u>, 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims."); <u>Bankers Trust N.Y. Corp. v. United States</u>, 225 F.3d 1368, 1376 (Fed. Cir. 2000) (holding Court of Federal Claims must apply Federal Circuit decisional law irrespective of other court of appeals decisions); <u>see also</u> 28 U.S.C. § 1295(a)(3) (2006) (vesting authority to hear "an appeal from a final decision of the United States Court of Federal Claims" in the Federal Circuit). Even though both the <u>Martinez</u> and <u>Chambers</u> cases were decided by the Federal Circuit after the Third Circuit's <u>Green</u> decision, they would serve as binding precedent in this case had <u>Green</u> followed those decisions.

    3/ Plaintiff attempts to make the back-door argument that he was wrongfully discharged: based on the ABCMR's 2008 decision, he "should have been promoted, and therefore, not released from active duty on July 1, 1989." Pl.'s Br. filed Dec. 10, 2010, at 7. The argument is factually inaccurate. As defendant points out, "The ABCMR found that [plaintiff's] failure to be promoted to Major in the US Army Reserve in March 1990 was due to missing paperwork . . . . [This] had no effect on [plaintiff's] separation from active duty in June 1989." Def.'s Br. filed Dec. 27, 2010, at 5 (emphasis omitted).

    Even if plaintiff had pursued a claim for wrongful discharge under 37 U.S.C. § 204, such a claim would have been subject to dismissal. Defendant is correct that, "[w]hen a plaintiff alleges wrongful discharge from the military, his claim for money damages accrues on the date of his discharge." Def.'s Br. filed Nov. 3, 2010, at 13 (citing, *inter alia*, <u>MaClean v. United States</u>, 454 F.3d 1334, 1336 (Fed. Cir. 2006); <u>Martinez</u>, 333 F.3d at 1303). Plaintiff was discharged on July 1, 1989, and the period for filing his claim expired six years thereafter. See Ex. 7 (Order No. 063-212).

takes issue with the ABCMR's December 15, 2009 determination that "[p]laintiff was not eligible to undergo a MEB." Compl. ¶ 22. Plaintiff's physical disability recognized by the VA "should have been determined as aggravated by service" and "precluded meaningful activity from a military point of view." Id. ¶ 23. Plaintiff contends that the ABCMR's December 15, 2009 decision not "to re-characterize [p]laintiff's military discharge to a military medical retirement" was arbitrary and capricious. Id. ¶ 24.

The December 15, 2009 ABCMR decision was a reconsideration of the Board's previous December 30, 2008 determination that plaintiff was "not eligible for physical disability processing (i.e. MEB)." In re Fulbright, ABCMR No. AR20080015402, at 5. Moreover, the December 30, 2008 correction board cited Chapter 61 of Title 10 of the United States Code as the basis for determining "disability retirement or separation for a member who is physically unfit to perform the duties of his office, rank, grade or rating because of disability incurred while entitled to basic pay," id. at 4, the chapter and language of 10 U.S.C. § 1201. The court thus construes plaintiff's claim as a claim for disability retirement benefits arising under 10 U.S.C. § 1201.

   3.  Whether jurisdiction exists

Judicial review of the ABCMR's December 15, 2009 determination that plaintiff is not eligible for disability retirement is time-barred by the statute of limitations. The six-year statute of limitations applicable to a claim under 10 U.S.C. § 1201 and 28 U.S.C. § 1491 accrued when the "first statutorily authorized board" denied plaintiff's claim, no later than April 7, 1993. See Chambers, 417 F.3d at 1224. Plaintiff's well-documented military record demonstrates his repeated requests for disability retirement and his long-time understanding of, and belief in, his current claim.

Plaintiff first requested that the Army Reserve Personnel Center initiate a Medical Review Board in a letter dated August 30, 1990. See Ex. 13, at 2. His request outlined the steps that he took on July 2, 1989, to claim service-connected disability compensation with the VA and explained how his claim was granted on August 10, 1990, with a combined evaluation of 50%. Id. Plaintiff requested at that time to be "released from the Individual Ready Reserve (IRR) USAR Control Group (REINF) and placed on the Medically Retired List with all associated rights and privileges thereof." Id. at 3.

In a letter dated June 4, 1991, ARPERCEN informed plaintiff that he did "not meet the standards for retention in the U.S. Army Reserve" because plaintiff had "arthritis of right ankle, status post surgery and internal derangement of right ankle." Ex. 14. The letter did not mention plaintiff's request for a MEB, instead enclosing a form setting forth plaintiff's options for retirement, none of which included disability retirement. Id. Defendant characterizes the Army's letter and ultimate transfer of plaintiff to the Retired Reserve as a

11

"refusal of [plaintiff's] request . . . [that] triggered the running of the statute of limitations period." Def.'s Br. filed Nov. 3, 2010, at 16.

Knowingly dissenting from a classification of Retired Reserve, plaintiff again requested a medical disability classification when he filed his responsive form, indicating that he wished to be classified on a "medical disability" list, Ex. 15, at 1, and stating that he was wrongfully discharged and that he "should have instead been Medically Retired from Active Duty," id. at 2. When the Army reassigned plaintiff to the Retired Reserve on May 22, 1991, because he was "medically disqualified for retention in an active status," Ex. 16, defendant asserts that plaintiff was fully aware of the Army's refusal to grant his request, Def.'s Br. filed Nov. 3, 2010, at 15-16. According to defendant, the May 22, 1991 order of transfer to the Retired Reserve "'alerted the plaintiff to the Army's adverse position concerning any claim that he might have for disability retirement pay.'" Id. at 16 (quoting Real, 906 F.2d at 1561). Plaintiff could have sought relief in court at that time.

Even if the court were to credit the contention that the ABCMR first sorted out an accurate chronology of plaintiff's eligibility for disability retirement in its initial decision and set the appropriate trigger date as April 7, 1993, the date of that first ABCMR decision, the result would not be changed. Plaintiff filed an application before the ABCMR sometime prior to May 27, 1992. Ex. 17. The decision dated April 7, 1993, characterized plaintiff's application as claiming that he "should have been referred for disability processing 'after adverse medical examination results were discovered during [his] separation physical.' He further states that he was subsequently awarded a disability rating by the VA." Id. at 2. The ABCMR determined that plaintiff "did not have any medically unfitting disability which required physical disability processing," noting that the award of a VA disability rating "does not establish entitlement to medical retirement." Ex. 18, at 5. At the latest, plaintiff's claim for disability benefits accrued on April 7, 1993. See Real, 906 F.2d at 1562.

Plaintiff now attempts to assert the same claim, although plaintiff states that he is "asking the Court to review the final decision of the ABCMR dated December 15, 2009." Pl.'s Br. filed Dec. 10, 2010, at 3. The December 15, 2009 determination was a request for reconsideration of the December 30, 2008 decision. Ex. 26, at 1. By that decision the ABCMR determined that plaintiff had been medically fit for service at the time of his separation and should be promoted retroactively to the rank of major. In re Fulbright, ABCMR No. AR20080015402, at 5. As such, "he was not eligible for physical disability processing (i.e. an MEB)." Id. Moreover, because "[t]here is no tolling by further consideration after final board action," Friedman, 310 F.2d at 390, plaintiff cannot assert that this is one continuous claim for which he just received the "final" decision. Rather, plaintiff had a claim for judicial relief after the first ABCMR decision issued in 1993, denying his request for disability retirement status and "'alert[ing] the plaintiff to the [ABCMR's] adverse position.'" Stone v. United States, 4 Cl. Ct. 250, 259 (1984) (quoting Miller v.

12

United States, 361 F.2d 245, 249-50 (Ct. Cl. 1966)) ("Where a serviceman is aware of his disability, this Court has even held the claim to accrue when the serviceman is informed by the Army that his claim will not be heard by a retiring board, even though no board was first requested."). Nothing in the record suggests that plaintiff sought reconsideration of that decision until 2008, beyond the date on which the statute of limitations for filing a claim in the Court of Federal Claims had run. Plaintiff cannot seek judicial review of the ABCMR's December 15, 2009 decision because his claim is time-barred. See Friedman, 310 F.2d at 394.

Plaintiff's contention that the Government has waived its statute of limitations defense by issuing the ABCMR 2008 and 2009 decisions is without merit. The ABCMR operates under different statutory authority than the Court of Federal Claims. Section 1552 of Title 10 sets forth the three-year time limit for filing an application for correction of military records, as well as the exception to the rule—when the ABCMR determines that it would be in the interest of justice to consider the application. 10 U.S.C. § 1552(b). By contrast, the statute of limitations applicable to the Tucker Act is set forth under 28 U.S.C. § 2501, and the United States Supreme Court has declared that the Government cannot waive the statute of limitations under § 2501, as it is a jurisdictional limitation that can be raised *sua sponte*. John R. Sand, 552 U.S. at 134. The Federal Circuit closed the circle by reiterating that the applicable statute of limitations is not tolled by a plaintiff's election to pursue the permissive remedy of a correction board proceeding. Martinez, 333 F.3d at 1312; see also Young, 529 F.3d at 1384 ("[T]he Tucker Act's statute of limitations . . . cannot be waived or extended by equitable considerations.").

    4. Whether the case should be transferred

Plaintiff asks, alternatively, that the court, having determined that jurisdiction is lacking, transfer his claim to the United States District Court for the District of Columbia for review under the APA. Pl.'s Br. filed Dec. 10, 2010, at 10-12. The transfer statute requires that "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court *shall*, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . . ." 28 U.S.C. § 1631 (2006) (emphasis added); see Jan's Helicopter Serv. Inc. v. FAA, 525 F.3d 1299, 1303-04 (Fed. Cir. 2008); Rodriguez v. United States, 862 F.2d 1558, 1559-60 (Fed. Cir. 1988). The Federal Circuit has provided clear guidance on this issue, instructing that a case should not be transferred where the Court of Federal Claims could have offered a "full and adequate remedy" had the case been timely filed. Martinez, 333 F.3d at 1320.

5. Request to suspend case pending resolution of Henderson v. Shinseki

Plaintiff has moved the court to stay this case pending resolution of the appeal to the Supreme Court of Henderson v. Shinseki, 589 F.3d 1201 (Fed. Cir. 2009), cert. granted, 130 S. Ct. 3502 (2010). Pl.'s Br. filed Dec. 12, 2010, at 8 n.5. In Henderson the plaintiff appealed a dismissal for failure to file a notice of appeal with the United States Court of Appeals for Veterans Claims from the Board of Veterans' Appeals within the time period required by 38 U.S.C. § 7266(a) (2006). Henderson, 589 F.3d at 1203-04. The statute at issue in Henderson is inapplicable to the case at bar. Instead, the recent Supreme Court holding in John R. Sand, that directly interprets the Tucker Act statute of limitations, is the relevant authority. See Young, 529 F.3d at 1384 (interpreting John R. Sand as "holding that the statute of limitations applicable to Tucker Act claims, 28 U.S.C. § 2501, is jurisdictional and not susceptible to equitable tolling"). Plaintiff's request is denied.

## CONCLUSION

Plaintiff failed to discharge his burden to establish jurisdiction. Plaintiff's claim accrued no later than April 7, 1993, when the ABCMR first determined that he was not eligible for disability retirement benefits, and it expired six years later. Subsequent ABCMR consideration of plaintiff's claims did not change the accrual date. Accordingly,

**IT IS ORDERED**, as follows:

1. Plaintiff's motion for a stay is denied.

2. Defendant's motion to dismiss is granted, and the Clerk of the Court shall dismiss the complaint without prejudice for lack of subject matter jurisdiction.

No costs.

/s/ Christine O. C. Miller

**Christine Odell Cook Miller**
Judge